## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

**LUCILLE VAUGHN,**

      **Plaintiff,**

**vs.**                         **Case No. 4:19cv155-WS/CAS**

**ANDREW SAUL, Commissioner of Social Security,**

      **Defendant.**

_____/

## REPORT AND RECOMMENDATION

This is a Social Security case referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to N.D. Fla. Loc. Rule 72.2(D); 28 U.S.C. § 636(b).  It is now before the Court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Acting Commissioner (Commissioner) of the Social Security Administration denying Plaintiff's Title II application for period of disability and Disability Insurance Benefits (DIB).  After careful consideration of the entire record, the decision of the Commissioner should be affirmed.

# I. Procedural History and Testimony

On December 3, 2015, Plaintiff, Lucille Vaughn,[1] applied for disability benefits with an alleged onset date of December 1, 2014, based on bipolar disorder.  Tr. 118.[2]  Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2021.  Tr. 12.  Plaintiff's application was denied initially on June 3, 2016, and upon reconsideration on July 20, 2016.  Tr. 159, 143.  On reconsideration, consideration was also given to claims of depression, anxiety, memory loss, pain in her right arm, abdominal pain, and standing problems.  Tr. 131, 136, 139.

Plaintiff requested a hearing on July 28, 2016.  Tr.169.  Plaintiff submitted a prehearing memorandum on December 12, 2017.  Tr. 326.  On December 19, 2017, Administrative Law Judge (ALJ) Alisa M. Tapia, conducted a hearing in Thomasville, Georgia, where Plaintiff and her husband appeared and testified.[3]  Tr.10, 52, 97, 219.  John Black, Ph.D.,

---

[1] Some of the Social Security documents refer to Plaintiff as Loucille Vaughn or Lucilla Vaughn.

[2] Citations to the transcript/administrative record, ECF No. 11, shall be by the symbol "Tr." followed by a page number that appears in the lower right corner of each page.

[3] The hearing was noticed for Thomasville, Georgia, and the decision of the ALJ states it was held in Thomasville, although the transcript of the hearing states it was held in Tallahassee, Florida.  *See* Tr. 10, 48, 219.

an impartial vocational expert, also testified.  Tr. 105-14.  Plaintiff was represented by Matthew Liebenhaut, an attorney.

On April 25, 2018, the ALJ entered a decision concluding that Plaintiff was not disabled.  Tr. 10-37.  Plaintiff filed a request for review of the ALJ's decision and filed a brief with the Appeals Council.  Tr. 334.  On February 6, 2019, review was denied.  Tr. 1-3.

On April 9, 2019, Plaintiff filed a Complaint requesting judicial review of the Commissioner's final decision.  ECF No. 1.  Plaintiff filed an amended memorandum in support of the Complaint, ECF No. 15, followed by the Commissioner's memorandum in support of the decision and response to Plaintiff's memorandum, ECF No. 17, which have been considered.

## A. The Hearing

At the hearing held December 19, 2017, Plaintiff testified that she is 5'5" tall and weighs 198 pounds, and that her weight fluctuates.  Tr. 52. She was age 57 on the alleged disability date of December 1, 2014.  Tr. 35. She is married and lives with her husband, who is disabled from a work injury.  Tr. 53.  Plaintiff testified that she can drive and has a license, but her husband has not let her drive for several months because she forgets where she is going and once could not find her car at the Walmart.  Tr. 55,

94.  She completed the ninth grade.  Plaintiff was working as a cashier and stocker at the Dollar General from 2011 to 2016.  She testified that she left employment at the Dollar General because of her health, problems with her liver, and the inability to stand on her feet very long.  Tr. 56.  She also testified that she and the manager did not get along.  Tr. 92.  Prior to that job, she worked as a cashier, worked in the deli as a cook, and did some mopping at a Kangaroo store for a few years beginning in 2004, but was fired for selling cigarettes to a minor.  Tr. 56-57, 59, 92.  She was unable to fully explain her work history and testified she had been having memory issues for a couple years.  Tr. 63.

When asked what primarily prevents her from working, Plaintiff testified that she is depressed all the time and cannot stand on her feet for more than five to ten minutes before her feet start hurting.  Tr. 63.  She testified that when she walks, she gets tired and weak.  *Id.*  She estimates she can walk about 25 feet.  Tr. 74.  She said her doctors could not discover why it hurt so much to stand and why her feet hurt.  Tr. 64.  She agreed she declined physical therapy recommended by her doctor because she believed it would cause too much pain.  Tr. 64.  She testified she has pain in her right side around her liver that often lasts all day.  Tr. 64, 72.  Plaintiff also reported pain in her back, but is no longer taking any

medication for that because she could not afford the prescriptions. Tr. 65-67. Her back pain is associated with standing or walking and is improved with rest. Tr. 72. She takes ibuprofen. Tr. 73. Plaintiff testified she can lift a jug of milk and carry it from the truck to the house but it makes her very tired to do so. Tr. 74. She did not think she could carry two gallons of milk. Tr. 88.

Concerning her daily activities, Plaintiff testified that she takes her medication when she gets up and then sits in the recliner to watch TV for the rest of the day. She can take care of her personal hygiene and washes dishes but her husband does the cooking and most of the house cleaning and clothes washing. Tr. 74-75. He sometimes has to help her to the living room after she showers because her energy is drained. Tr. 88. He also does the outside work and any repairs. Tr. 78-79. Plaintiff testified she and her husband both take care of the dog. Tr. 78. Sometimes she will visit with her mother for a short time or go to her son's house, but only rarely. Tr. 77-78, 89. She does not stay long because she cannot stand being around the "turmoil" and people "fussing." Tr. 84. She said she cannot stay long because the children will "whoop and holler" and she cannot take the racket. Tr. 89. Plaintiff testified that when she went to her sister-in-law's house for Thanksgiving, she got nervous and panicky around

the five or six people present and had to go outside by herself.  Tr. 85.  She

testified that when her husband has to go to Atlanta once a month, she

cannot stay home by herself because she becomes panicky, so he has a

granddaughter come over.  Tr. 94.

Plaintiff testified that she has suffered from depression for some time

and from bipolar disorder since she was age 25.  Tr. 68.  She takes

medication that helps sometimes.  Tr. 70-71.  She said she has problems

paying attention when people are talking to her because she sometimes

feels depressed and tunes them out.  Tr. 79-80.  When she feels

depressed, she said she cannot do anything.  Tr. 80.  She was resistant to

psychotherapy but admits that her recent psychotherapy seems to help

some.  Tr. 69.  She also testified that medications are effective with her

problem sleeping.  Tr. 79.  She testified she sometimes has difficulty

following instructions and needs help.  Tr. 80.  She testified that she

recently needed help from one of her sons in filling out papers and

understanding what to do regarding refinancing her home.  Tr. 91.

On questioning by her counsel, Plaintiff testified that she has had a

hard time following the questions in the hearing.  Tr. 83.  She agreed that

sometimes she answered "yes" to the ALJ's questions, such as whether the

medications were working, because she was scared or did not fully understand the questions. Tr. 86-87.

Plaintiff's husband testified at the hearing that Plaintiff has pain in her side, her back, and in her knee. She often "gives out" and must be helped back to her chair. Tr. 97. He testified that he tries to take his wife shopping but she gets so upset in a crowd that they have to leave. Tr. 99. He said Plaintiff cannot really visit her grandchildren or her mother because she gets so upset around people. Tr. 100. He said she sometimes sits and cries for no reason. Tr. 100. He has not seen any improvement from the increased medication dosages. Tr. 101. He said she started having anxiety attacks when she was still working and he had to bring her home quite a few times. Tr. 103. He said her problems being around people started in 2016 and it has gotten worse over time, along with her problems with her liver and her bones. Tr. 103, 105.

John Black, Ph.D., an impartial vocational expert, categorized Plaintiff's prior employment as Short-Order Cook, DOT#313.374-014, semi-skilled, SVP of 3, light exertion level; Convenience Store Cashier, DOT#211.462-010, unskilled, SVP of 2, light exertion level; and Retail

Cashier/Stocker, DOT#290.477-014, semiskilled, SVP of 3, medium

exertion level as performed.  Tr. 107.[4]

Dr. Black was asked if a person of Plaintiff's age, education, and past

work experience who can only tolerate simple, routine tasks could perform

Plaintiff's past work.  Tr. 107.  He testified that the only job she could still

perform would be that of cashier.  Tr. 107.  He testified that a person with

that limitation could perform other jobs including Hand Packager,

DOT#920.587-018, SVP of 2, medium exertion level with 43,000 jobs

nationally.  Tr. 108.  Dr. Black testified that the person could also perform

as a Dietary Aide, DOT#319.677-014, unskilled, SVP of 2, medium exertion

---

[4] "[SVP] is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation."  Dictionary of Occupational Titles (4th ed., rev. 1991), Appendix C: Components of the Definition Trailer, § II, Specific Vocational Preparation (SVP), 1991 WL 688702.  An SVP of 2 allows for preparation time of "[a]nything beyond short demonstration up to and including 1 month," an SVP of 3 allows "[o]ver one month up to and including 3 months," and an SVP of 4 allows for "over 3 months up to and including 6 months."  Id.  Semi-skilled work is work that needs some skills but does not require doing the more complex work duties.  20 C.F.R. § 404.1568(b).  "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."  20 C.F.R. § 404.1568(a).  Unskilled work corresponds to an SVP of 1-2 whereas semi-skilled work corresponds to an SVP of 3-4. Social Security Ruling (SSR) 00-4p, 2000 SSR LEXIS 8, at *8 (Dec. 4, 2000).  In part, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).  "Medium work" involves lifting no more than 50 pounds at a time with frequent lifting or carrying objects weighing up to 25 pounds.  20 C.F.R. § 404.1567(c).

level with 65,000 jobs nationally; and Sandwich Maker, DOT#317.664-010, unskilled, SVP of 2, medium exertion level with 55,000 jobs nationally. Tr. 108.

A second hypothetical question asked about jobs for such a person, with the additional limitation that she could only tolerate occasional interaction with the public, and was able to understand, carry out, and remember only simple, routine tasks involving simple instructions, with the ability to adapt to work changes, and perform past work.  Tr. 108.  Dr. Black testified that person could not perform past work.  When further limitations were added in a third hypothetical—requiring a stable work environment with few changes in work processes or procedures that are gradually introduced—Dr. Black testified that the person could perform the job of Dietary Aide and Hand Packager.  Tr. 109.  Dr. Black testified the person could also perform the job of Salvage Sorter, DOT#929.687-022, SVP of 2, medium exertion level with 45,000 such jobs nationally.  Tr. 109.

In hypothetical number four, the ALJ added the requirement that the person work in an environment with few distractions, moderate noise, and a clean work place, with simple one-to-two step instructions, predictable schedule and planned breaks, and only occasional interaction with supervisors and no interaction with the public.  Tr. 109-10.  Dr. Black

testified that such person could perform the job of Hand Packager, Salvage Sorter and Car Porter, DOT#915.687-022, SVP of 2, medium exertion level with 21,000 positions nationally.  Tr. 110.

Plaintiff's counsel presented a fifth hypothetical that added the limitations that the person could only occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds, occasionally balance, stoop, kneel, crouch and crawl, and frequently reach with the left and right.  Tr. 112. Dr. Black testified that the person could still perform the three jobs testified to earlier.  Tr. 112.  Counsel then presented a further hypothetical adding the limitations that the person would require unscheduled work breaks from five to 15 minutes on average three times a day and/or be off task 15% or more in an average workday.  Tr. 112-13.  Dr. Black said such person would not be employable in the national economy.  Tr. 113.

Counsel asked Dr. Black if the hypothetical person also required a low stress job and had difficulty following even simple instructions, would such person be employable.  Tr. 113.  Dr. Black testified that if the person could not follow simple instructions, they could not be employed, but he could not speak to employability of a person who needed a low-stress job because that term is not sufficiently or uniformly defined.  Tr. 113-14.

**B. Findings of the ALJ**

After the evidentiary hearing and after a review of the medical record

and other evidence, the ALJ made findings in the decision issued on April

25, 2018, which are summarized as follows:

**1.** "The claimant meets the insured status requirements of the Social Security Act through December 31, 2021."  Tr. 12.

**2.** "The claimant has not engaged in substantial gainful activity since December 1, 2014, the alleged onset date."  *Id.*

**3.**  "The claimant has the following severe impairments: obesity, major depressive disorder, generalized anxiety disorder, mild degenerative disc disease of the cervical and thoracic spine, and moderate arthritis of the hip."  *Id.*  The ALJ further found that as for Plaintiff's obesity, her BMI throughout the years exceeds the NIH threshold of 30.0 and that the severe impairment of obesity combined with another impairment or impairments, is not of such magnitude that it would medically equal a listed impairment.  Tr. 13.

The ALJ also found non-severe impairments of multiple small exostoses in the proximal tibia of the left leg; diagnosis of bipolar disorder; hypothyroidism; and hyperlipidemia.  Tr. 13-14.  The ALJ concluded that Plaintiff's reports of abdominal pain with no objective signs of an impairment did not establish a medically determinable impairment, and causative diagnosis supported by objective evidence is not in the record.  Tr. 14-15.

**4.**  "The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  Tr. 15. The ALJ found that Plaintiff's spinal impairment is not characterized by nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis, and thus does not meet Medical Listing 1.04.  *Id.*  The ALJ found that Plaintiff's hip arthritis has not resulted in the inability to ambulate

effectively as required by Medical Listing 1.02A.  *Id.*  The ALJ found that Plaintiff's mental impairments considered singly or in combination do not meet or medically equal the criteria in listings 12.04 and 12.06.  The ALJ concluded that "paragraph B" was not satisfied because Plaintiff did not have one extreme or two marked limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing herself.

In reaching these conclusions, the ALJ found that the evidence shows Plaintiff can learn, recall, and use information to perform job activities even though Plaintiff reported that she did not understand written instructions.  The ALJ concluded Plaintiff had mild limitation in this area.  Tr. 16.

The ALJ found that in interacting with others, Plaintiff has moderate limitation, because she can relate to and work with supervisors and coworkers and the public.  She testified she left her last job because she could not stay on her feet and denied problems with supervisors and coworkers.  Tr. 16.  She reported attending church, visiting her mother, and venturing outside.  *Id.*

With regard to concentrating, persisting, or maintaining pace, the ALJ found that Plaintiff had moderate limitation, in that she can focus attention on work activities, sustain regular attendance at work, focus on television, and her mental examinations have reflected at least fair concentration.  Tr. 17.

As for adapting or managing oneself, the ALJ found Plaintiff had no limitation.  The ALJ relied on records that reflected Plaintiff's regulation of her emotions, control of her behavior, and maintaining well-being at work.  She reported she had no problem with personal care and could bathe and dress.  She reported doing minor household chores and some cooking.  She could sometimes drive and could use a cell phone.

The ALJ found no evidence of "paragraph C" criteria, requiring repeated episodes of decompensation and inability to function outside the home.

**5.** "After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except she can *occasionally* climb ramps and stairs. She can *never* climb ladders, ropes, or scaffolds. She can *occasionally* balance, kneel, stoop, crouch, and crawl. She can *frequently* reach to the left and right." Tr. 17-18. The ALJ further found Plaintiff can understand, remember, and carry out simple routine tasks involving simple work-related decisions; adapt to routine work changes; requires a stable work environment with gradually introduced changes; requires a clean work environment with few distractions and only moderate noise; requires simple one-to-two step instructions; predictable schedule and only occasional interaction with supervisors and no interaction with the public. Tr. 18.

**6.** "The claimant is unable to perform any past relevant work." Tr. 35.

**7.** "The claimant was . . . 57 years old, which is defined as an individual of advanced age, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching retirement age." Tr. 35.

**8.** The claimant has a limited education and is able to communicate in English. Tr. 36.

**9.** "Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills." Tr. 36.

**10.** "Considering claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." Tr. 36. The ALJ concluded that Plaintiff has the residual functional capacity to perform medium work with certain limitations. *Id.* The ALJ cited the jobs of Salvage Sorter, DOT#929.687-022, SVP of 2, unskilled, medium

exertional level, of which there are 45,000 jobs in the national economy; Hand Packager, DOT#920.587-018, SVP of 2, unskilled, medium exertional level, of which there are 43,000 jobs in the national economy; and Car Porter, DOT #915.687-022, SVP of 2, unskilled, medium exertional level, of which there are 21,000 jobs in the national economy.  Tr. 36.

**11.** "The claimant has not been under a disability, as defined in the Social Security Act, from December 1, 2014, through the date of this decision."  Tr. 37.

## II. Legal Standards Guiding Judicial Review

This Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles.  42 U.S.C. § 405(g); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); *accord* Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).  "The Commissioner's factual findings are conclusive if supported by substantial evidence."  Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002) (citations omitted).[5]

---

[5] "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it."  Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (citations omitted).  "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ.  A reviewing court must view the entire

"In making an initial determination of disability, the examiner must

consider four factors: '(1) objective medical facts or clinical findings;

(2) diagnosis of examining physicians; (3) subjective evidence of pain and

disability as testified to by the claimant and corroborated by [other

observers, including family members], and (4) the claimant's age,

education, and work history." <u>Bloodsworth</u>, 703 F.2d at 1240 (bracketed

material in original; citations omitted). A disability is defined as a physical

or mental impairment of such severity that the claimant is not only unable to

do past relevant work, "but cannot, considering his age, education, and

work experience, engage in any other kind of substantial gainful work which

exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A disability is

an "inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months." 42 U.S.C. §

423(d)(1)(A); *see* 20 C.F.R. § 404.1509 (duration requirement). Both the

---

record and take account of evidence in the record which detracts from the evidence
relied on by the ALJ." <u>Tieniber v. Heckler</u>, 720 F.2d 1251, 1253 (11th Cir. 1983).
"Unless the Secretary has analyzed all evidence and has sufficiently explained the
weight he has given to obviously probative exhibits, to say that his decision is supported
by substantial evidence approaches an abdication of the court's 'duty to scrutinize the
record as a whole to determine whether the conclusions reached are rational." <u>Cowart
v. Schweiker</u>, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

"impairment" and the "inability" must be expected to last not less than 12

months.  Barnhart v. Walton, 535 U.S. 212 (2002).  An individual is entitled

to DIB if she is under a disability prior to the expiration of her insured

status.  *See* 42 U.S.C. § 423(a)(1)(A); Moore v. Barnhart, 405 F.3d at 1211;

Torres v. Sec'y of Health & Human Servs., 845 F.2d 1136, 1137-38 (1st

Cir. 1988); Cruz Rivera v. Sec'y of Health & Human Servs., 818 F.2d 96, 97

(1st Cir. 1986).

    The Commissioner analyzes a claim in five steps.  20 C.F.R.

§ 404.1520(a)(4)(i)-(v):

1. Is the individual currently engaged in substantial gainful activity [SGA]?

2. Does the individual have any severe impairments?

3. Does the individual have any severe impairment or combination of impairments that meets or equals the criteria listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?

4. Does the individual have the RFC to perform work despite limitations and are there any impairments which prevent past relevant work?[6]

5. Do the individual's impairments prevent other work?

---

[6] Residual Functional Capacity (RFC) is the most a claimant can still do despite limitations.  20 C.F.R. § 404.1545(a)(1).  It is an assessment based upon all of the relevant evidence including the claimant's description of her limitations, observations by treating and examining physicians or other persons, and medical records.  *Id.*  The responsibility for determining claimant's RFC lies with the ALJ.  20 C.F.R. § 404.1546(c); *see* Cooper v. Astrue, 373 F. App'x 961, 962 (11th Cir. 2010) (unpublished) (explaining claimant's RFC determination "is within the province of the ALJ, not a doctor").

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits.  A positive finding at step three results in approval of the application for benefits.  At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work.  Consideration is given to the assessment of the claimant's RFC and the claimant's past relevant work.  If the claimant can still do past relevant work, there will be a finding that the claimant is not disabled.  If the claimant carries this burden, however, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy in light of the claimant's RFC, age, education, and work experience.  Phillips, 357 F.3d at 1237; Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986); 20 C.F.R. § 404.1520(a)(4)(v).  If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

    As the finder of fact, the ALJ is charged with the duty to evaluate all of the medical opinions of record, resolving conflicts that might appear.

20 C.F.R. § 404.1527.[7]  When considering medical opinions, the following

factors apply for determining the weight to give to any medical opinion:

(1) the frequency of examination and the length, nature, and extent of the

treatment relationship; (2) the evidence in support of the opinion, such as

"[t]he more a medical source presents relevant evidence to support an

opinion, particularly medical signs and laboratory findings, the more weight"

that opinion is given; (3) the opinion's consistency with the record as a

whole; (4) whether the opinion is from a specialist and, if it is, it will be

accorded greater weight; and (5) other relevant but unspecified factors.

20 C.F.R. § 404.1527(b) & (c).

    Pain is subjectively experienced by the claimant, but that does not

mean that only a mental health professional may express an opinion as to

the effects of pain.  To establish a disability based on testimony of pain and

other symptoms, the claimant must satisfy two parts of a three-part test

showing: (1) evidence of an underlying medical condition; and (2) either

(a) objective medical evidence confirming the severity of the alleged pain;

or (b) that the objectively determined medical condition can reasonably be

---

[7] This provision applies to claims filed before March 27, 2017.  For claims filed
after that date, section 404.1520c, titled "How we consider and articulate medical
opinions and prior administrative medical findings for claims filed on or after March 27,
2017," applies.  Plaintiff protectively filed her claim on December 3, 2015.

expected to give rise to the claimed pain.  Wilson, 284 F.3d at 1225.  This

is guidance for the way the ALJ is to evaluate the claimant's subjective pain

testimony because it is the medical model, a template for a treating

physician's evaluation of the patient's experience of pain.  The ALJ must

consider the question of whether the claimant's statement about the

intensity, persistence, and limiting effects of symptoms are consistent with

the objective medical evidence and other evidence of record.[8]

To analyze a claimant's subjective complaints, the ALJ considers the

entire record, including the medical records; third-party and the claimant's

statements; the claimant's daily activities; the duration, frequency, intensity

of pain or other subjective complaint; the dosage, effectiveness, and side

effects of medication; precipitating or aggravating factors; and functional

restrictions.  *See* 20 C.F.R § 404.1529 (explaining how symptoms and pain

are evaluated); § 404.1545(e) (regarding RFC, total limiting effects).  The

---

[8] Under SSR 16-3p, 81 Fed. Reg. 14166, 14167 (March 28, 2016), the agency
no longer refers to credibility, but focuses on whether the claimant's statements about
the intensity, persistence, and limiting effects of symptoms are consistent with the
objective medical evidence and other evidence of record.  *See* Hargress v. Soc. Sec.
Admin., Comm'r, 883 F.3d 1302, 1308 (11th Cir. 2018).  SSR 16-3p is to be applied by
adjudicators when they make determinations and decisions on or after March 28, 2016.
Arnold v. Soc. Sec. Admin., Comm'r, 724 F. App'x 772, 782 (11th Cir. 2018); *see* SSR
16-3p, 82 Fed. Reg. 49462-03, 49468 & n.27 (October 25, 2017) ("Our adjudicators will
apply this ruling when we make determinations and decisions on or after March 28,
2016. When a Federal court reviews our final decision in a claim, we expect the court
will review the final decision using the rules that were in effect at the time we issued the
decision under review.").

ALJ may discount subjective complaints of pain if inconsistencies are apparent in the evidence as a whole.  *See* <u>Moore</u>, 405 F.3d 1212.

A claimant bears the burden of proving he or she is disabled, and consequently, is responsible for producing evidence in support of the claim. *See* 20 C.F.R. § 404.1512(a); <u>Moore</u>, 405 F.3d at 1211.

## III. Analysis

Plaintiff contends that the ALJ erred in finding Plaintiff can do medium exertion level work by essentially ignoring her knee impairment and finding it to be non-severe.  She contends that if the ALJ had recognized the knee impairment as a severe impairment, Plaintiff could only do light work, rather than medium work, and would have been deemed disabled under the Medical Vocational Guidelines 202.01 or 202.02.  ECF No. 15 at 1-3. Plaintiff also contends that the ALJ erred by misstating and ignoring evidence in the record to find that she was only mildly limited in understanding, remembering, or applying information and moderately limited in interacting with others.  ECF No. 15 at 5.  Plaintiff further contends that the ALJ inappropriately disregarded her subjective complaints due to inconsistent statements without evaluating how Plaintiff's memory problems contributed to the inconsistencies.  ECF No. 15 at 8. Finally, Plaintiff contends that the ALJ's decision is internally inconsistent

because it finds generalized anxiety disorder to be a severe impairment, but discounts Dr. Sampson's diagnosis of anxiety by stating that the record does not support such diagnosis.  ECF No. 15 at 9.  Each contention will be discussed in turn.

### A. Knee Impairment

The ALJ found that Plaintiff had the severe impairments of obesity, major depressive disorder, generalized anxiety disorder, mild degenerative disc disease of the cervical and thoracic spine, and moderate arthritis of the hip, but did not find Plaintiff's knee impairment to be severe.  Tr. 12-13.  The ALJ is not required to identify all impairments that may be considered severe.  *See* Heatly v. Comm'r of Soc. Sec., 382 F. App'x 823, 825 (11th Cir. 2010) (unpublished).  Moreover, the ALJ did not ignore Plaintiff's knee impairment, but evaluated it in light of the evidence and found it non-severe.  The ALJ found that March 2017 X-rays of the left knee showed two small exostoses involving the proximal tibia.  Tr. 13, 650.  The ALJ noted that an MRI in April 2017 showed multiple small exostoses, or bony growths, in the left knee without signs of malignant transformation or internal derangement of the knee.[9]  Tr. 13, 651-52.  The ALJ found the

---

[9]  Plaintiff argues that the ALJ did not account for what Plaintiff describes as "an increase from two to multiple exostoses in a one (1) month period."  ECF No. 15 at 2. She appears to refer to the X-ray report that indicated two small exostoses and the MRI

record does not establish that the knee impairment could cause or be expected to cause significant limitations for at least twelve continuous months.  Tr. 13.  This conclusion was based primarily on examinations showing Plaintiff with a full range of motion in all joints, stable objective findings, and a gap between related complaints and treatment.  *Id.*  Plaintiff has not demonstrated error in this finding.

When Plaintiff filed her application for disability benefits, she did not specifically cite her knee impairment or any other physical impairment as a basis for not being able to work.  At the hearing, Plaintiff cited as her main reasons for not being able to work her depression, that she cannot stand on her feet for more than five to ten minutes before her feet start hurting, and that she has liver problems.  Tr. 56, 63.  She said her doctors could not discover why it hurt so much to stand for very long and why her feet hurt.  Tr. 64.  She testified that when she walks, she gets tired and weak.  Tr. 63.

---

report that indicated "multiple" exostoses.  The reference to "multiple" does not clearly indicate that more than two exostoses were found and had developed over a short time period.  "Multiple" is defined as "consisting of, including, or involving more than one."  Webster's Third International Dictionary 1485 (1986).  Thus, the record does not support a finding that the exostoses were increasing rapidly in a one-month period.  In 2005, a Georgia Memorial Hospital and Manor radiology report of a study of her left knee due to an injury showed a probable exostosis at that time.  Tr. 390.  Plaintiff worked for many years after that as a cashier and did not report any knee pain until March 2017.

Although Plaintiff alleges her disability commenced on December 1, 2014, the records show no knee complaints, testing, or treatment in 2014, 2015, or 2016.  In a consultative examination by Dr. Wayne Sampson on May 6, 2016, as to her physical problems, Plaintiff reported intermittent abdominal pain and liver problems.  Tr. 532.  Her motor strength was 5/5 throughout, her gait was normal, and she could stand and walk on her heels and toes.  Tr. 533.  She rose from a seated position without difficulty and straight leg raise was negative.  Tr. 534.  She did not report knee pain at that time.

Plaintiff complained of left knee pain in her March 23, 2017, office visit with Dr. Charles O. Walker.  Tr. 646.  Office notes indicate no swelling in the joint and normal gait and normal range of motion in all joints. Tr. 647-48.  X-rays of the knee showed two small exostoses and Plaintiff received a Depo Medrol knee injection.  Tr. 650.  In her August 7, 2017, office visit with Dr. Walker, Plaintiff received a follow-up injection in her knee.  Tr. 653.  Office notes again indicate a full range of motion in all joints.  Tr. 655.  Dr. Walker's impression from that visit was lumbar back pain and thoracic back pain, and pain medication was prescribed.  Tr. 656. Minimal degenerative changes were noted on X-rays of Plaintiff's lower thoracic spine and cervical spine, and moderate degenerative changes in

the left hip.  Tr. 659, 660-61.  Plaintiff reported left leg pain in her

September 7, 2017, visit to Dr. Walker.  Tr. 662.  However, her left knee

was not specifically mentioned in the office notes.  The notes indicate her

gait was normal and she had normal full range of motion in all joints.

Tr. 663.  Dr. Walker's impression on this visit was thoracic radiculopathy

and hyperlipidemia, with a referral to pain management.  Tr. 664.  The

medical record supports the ALJ's finding that Plaintiff's knee impairment

was non-severe.

The record also shows that Plaintiff continued to work at least part

time as a cashier during 2014, 2015, and 2016.  Tr. 56, 241.  In June 2016,

Plaintiff described her work from 2011 to 2016 as including acting as

cashier, putting up stock, and mopping.  Tr. 294-95.  She reported lifting 50

pounds infrequently and 25 pounds frequently.  *Id.*  She reported walking

and standing for 6 hours a day.  *Id.*  Nothing appears in the medical records

to indicate that Plaintiff could not continue to perform these same activities.

These activities described by Plaintiff are consistent with medium work as

defined in 20. C.F.R. § 1567(c), and the ALJ found that Plaintiff can do

medium work with certain limitations.  Tr. 17.  *See also* Social Security

Ruling 83-10, stating that a full range of medium work requires standing or

walking, off and on, for a total of approximately 6 hours in an 8-hour workday.

State agency medical consultant Robert Steele, M.D., opined in July 2016 that Plaintiff could occasionally lift 50 pounds and frequently lift 25 pounds, stand and/or walk with normal breaks for a total of 6 hours in a normal workday, and could sit for a total of 6 hours in a workday.  Tr. 139. Dr. Steele found the records did not support postural, manipulative, visual, communicative, or environmental limitations.  *Id.*  This opinion was consistent with the examining physician's medical records and with Plaintiff's self-report in 2016.  In 2017, after tests showed Plaintiff's exostoses, follow-up examinations with Dr. Walker in August 2017 and September 2017 indicate normal full range of motion in all joints, normal gait, and normal muscle strength and tone.  Tr. 655, 663.  These findings and the medical records that provide the basis for them constitute substantial evidence supporting the ALJ's conclusion that  Plaintiff's knee impairment is non-severe and that she can perform medium work.

The ALJ also noted that in April 2016, Plaintiff self-reported that she cleans the house, washes the clothes, vacuums, washes dishes, takes care of her husband, makes all the meals, and goes outside four or five times a day.  Tr. 30 (citing tr. 265-72).  Plaintiff indicated that she could not

lift "very much," but had a history up until she left her last cashier job in 2016 that included substantial lifting, standing, and walking.  *See* Tr. 294-95.  Her medical records show consistent notations of normal gait, normal strength, and normal range of motion in all joints.  *See, e.g.*, Tr. 533, 536-37, 604, 609, 617, 629, 632, 637.

Plaintiff has not demonstrated error in the ALJ's finding that her knee impairment was non-severe.  Nor has Plaintiff demonstrated the ALJ should have found Plaintiff can do only light work.

### B.  Whether the ALJ Ignored or Misstated Evidence

Plaintiff next contends that the ALJ misstated evidence in finding Plaintiff is mildly limited in understanding, remembering, or applying information, and moderately limited in interacting with others.  ECF No. 15 at 5.  Plaintiff cites the opinion of Ann Jacobs, Ph.D., who found Plaintiff was only able to recall one out of three objects after five minutes, could not recall the past President, state capital, or number of months in a year, and found Plaintiff had a weak memory.  Plaintiff also noted that the ALJ's decision did not mention Dr. Jacobs' opinion that Plaintiff would have difficulty interacting with others and has a low stress tolerance due to mental impairments.  ECF No. 15 at 6.  Plaintiff cites testimony by Plaintiff and her husband concerning her self-isolation, irritability around others, and

her testimony that she left her last job in part because she did not get along with her supervisor.  ECF No. 15 at 5-6.

The ALJ cited the opinion of Dr. Jacobs that Plaintiff was withdrawn by choice and that Plaintiff "is capable of following simple, varied and concrete complex instructions."  Tr. 32.  Dr. Jacobs also found Plaintiff's stress tolerance low, pace average, and persistence variable.  *Id.*  The ALJ gave the opinion great weight and concluded that Plaintiff can perform simple, routine tasks with social limitations.  While not specifically mentioning the results of the memory tests conducted by Dr. Jacobs, the ALJ relied on the final conclusions and opinion of Dr. Jacobs, which were formulated with those test results and other examination findings in mind, and gave her opinions great weight.  In Dr. Jacobs' report, she notes that Plaintiff was alert and oriented in all spheres.  There was no indication of a severe thinking impairment.  Tr. 541.  She found Plaintiff's concentration satisfactory and that Plaintiff had the ability to orally calculate simple math, could spell "world" forward and backward, and could count backward from 20.  Dr. Jacobs found Plaintiff's memory to be weak.  Tr. 541.  Even so, Dr. Jacobs concluded that Plaintiff is capable of following simple, varied, and concrete complex instructions and could proceed at an average pace and variable persistence.  Tr. 542.  Dr. Jacobs found Plaintiff would have

"some difficulty" relating the public.  *Id.*  These limitations are reflected in the RFC determined by the ALJ.

The ALJ also gave substantial weight to the opinions of state agency psychological consultants, Brian McIntyre, Ph.D., and Robert Hodes, Ph.D., who conducted record reviews at both the initial and reconsideration levels. Both opined that Plaintiff had mild difficulties in maintaining social functioning and restriction of activities of daily living and moderate difficulties in maintaining concentration, persistence, or pace.  Both experts noted that Plaintiff was capable of performing simple, routine tasks.  Tr. 31, 126, 141.

In the RFC determined by the ALJ, she limited Plaintiff to carrying out simple routine tasks involving simple work-related decisions in a stable work environment  with few changes and few distractions.  Tr. 18.  The ALJ also limited Plaintiff to a job where she received simple one-to-two step instructions, oral or written, a predictable schedule, planned breaks, only occasional interaction with supervisors, and no interaction with the public. *Id.*  These limitations take into consideration and give effect to Dr. Jacobs' findings and conclusions.  They also take into consideration Plaintiff's testimony that she does not like to interact with others and that she did not

get along with her most recent supervisor, a fact which the ALJ did not ignore. *See* Tr. 22.

The ALJ's findings that Plaintiff is mildly limited in understanding, remembering, or applying information, and moderately limited in interacting with others are based on substantial evidence in the record.  As noted earlier, "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted).  Citations to various portions of the record that Plaintiff believes could support a different interpretation of the record is "not sufficient because the nature of this review does not involve reweighing the evidence or substituting the judgment of the Court for that of the Commissioner." Raymond v. Soc. Sec. Admin., Comm'r, 778 F. App'x 766, 776 (11th Cir. 2019) (unpublished) (citing Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).  Rather, "[w]e must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence."  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted).

Plaintiff also argues that the ALJ erroneously gave only little weight to Dr. Sampson's mental assessment of Plaintiff that she had bipolar disorder

and anxiety disorder because, as the ALJ explained, Dr. Sampson was relying primarily on Plaintiff's self-reports, he was not a mental health specialist, and the record did not "support such diagnoses." ECF No. 15 at 7; Tr. 31. Plaintiff argues that the doctor's impressions should have been given great weight because Dr. Sampson is a licensed doctor with the ability to evaluate a claimant's mental state "as demonstrated in his observation of Ms. Vaughn's depressed mood and affect." ECF No. 15 at 7. Plaintiff contends that more weight should have been given because the ALJ found, based on the record, that Plaintiff did in fact suffer from generalized anxiety disorder and because treatment records show she was treated for her diagnosis of bipolar disorder. *Id*

The ALJ found, in pertinent part, that Plaintiff had the severe impairments of major depressive disorder and generalized anxiety disorder. The ALJ did not find bipolar disorder to be a severe impairment, specifically noting that Plaintiff did not have recurring manic symptoms. The ALJ explained that the diagnosis of bipolar was remote in time and the records show that Plaintiff did not report a history of recurrent manic symptoms. Plaintiff's records from 2012 show a diagnosis of bipolar disorder. In May 2016, Plaintiff endorsed "periodic mania and racing thoughts" in her visit with Dr. Sampson, but denied hyperactivity or impulsivity. She admitted

she felt depressed most of the time.  Tr. 532.  Although her medical records indicate a diagnosis of bipolar disorder, the treatment records do not substantiate consistent notation of or treatment for any manic symptoms suffered by Plaintiff.  *See, e.g.*, Tr. 392, 450, 456, 459, 469, 474, 480, 485, 489, 491, 497, 503, 509, 515, 520, 526, 569, 574, 579, 584, 595, 600.  Dr. Jacobs' notes from May 2016 do not include bipolar disorder in the diagnostic impression section, mentioning only anxiety, major depressive disorder, panic disorder, and back pain.  Tr. 542.  Thus, the ALJ's rejection of bipolar disorder as a severe impairment was reasonable and supported by the record.

Further, the finding of major depressive disorder and generalized anxiety disorder as severe impairments, and the resulting restrictions in the RFC, account for limitations that might have been imposed for the impairment of bipolar disorder.  The existence of an impairment does not mandate a finding of disability.  Disability is determined by the effect the impairment has on ability to work.  *See* McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986).  Although Plaintiff's medical records from 2012 show a diagnosis of bipolar disorder, she continued to work as a cashier from 2011 to 2016.  The ALJ explained that she found bipolar disorder was not a severe medically determinable impairment, but that she "considered the

claimant's psychological symptoms in the assessment of her mental residual functional capacity."  Tr. 14.  Plaintiff has not demonstrated that her diagnosis of bipolar disorder had any effect, above and beyond the effect caused by her depressive disorder and generalized anxiety disorder, on her ability to work—which effects were accounted for in the RFC.

Because substantial evidence supports the ALJ's findings concerning Plaintiff's limitations in understanding, remembering, or applying information and in interacting with others and, further, supports the ALJ's rejection of bipolar disorder as a severe impairment, the ALJ did not err in those findings.

### C.  Effect of Memory Problems on Inconsistent Statements

Plaintiff contends that the ALJ improperly discounted Plaintiff's short-term memory issues in spite of her consistent assertions that she suffers from memory impairment.  ECF No. 15 at 8.  Plaintiff argues that the ALJ focused on contradictions involving Plaintiff's statements regarding her ability to complete activities of daily living and the reason why she left her previous two jobs, but does not explain that Plaintiff had memory problems which, Plaintiff argues, could account for those contradictions.  *Id.*

The ALJ noted in the decision (Tr. 22) that at the hearing, Plaintiff testified that she left her job at the Dollar General because of depression,

pain in her feet, and liver problems (Tr. 56), but on questioning by her attorney, agreed that she had problems with her manager.  Tr. 92.  The ALJ noted in the decision that Plaintiff reported in 2016 that she had not been fired or laid off because of problems getting along with other people. Tr. 19, 271.  The ALJ also noted in the decision that despite Plaintiff's testimony that she could not do anything around the house and needed help after showering, she reported in April 2016 that she made the bed, washed clothes, made meals, took care of her husband, and cleaned.  She reported that she had no problems with self-care, bathing, etc.  Tr. 18-19, 265-271.  Plaintiff does not explain how consideration of Plaintiff's memory problems would account for these contradictions or why consideration of these facts was not justified in determining if Plaintiff's impairments prevent her from working.

Plaintiff reported memory problems numerous times in her self-reports in support of her application.  *See, e.g.*, Tr. 265, 269, 282, 285, 287. Dr. Jacobs noted in her report that Plaintiff had a weak memory.  Tr. 541. Even so, Dr. Jacobs opined that Plaintiff was capable of following simple, varied, and complex instructions.  Tr. 542.  Although Plaintiff alleges disability beginning December 1, 2014, she was able to maintain employment during 2014, 2016, and part of 2016 in spite of her weak

memory.

The ALJ properly considered whether Plaintiff's claims and testimony conflicted with clinical findings, opinions of her medical providers, and other evidence in the record, including records documenting activities of daily living.  *See* Tr. 28-30.  The ALJ recognized that whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must consider other evidence in the record to determine if Plaintiff's symptoms limit the ability to do work-related activities.[10]  Tr. 18.  Factors relevant to evaluation of the claimant's symptom include daily activities; location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; medication; treatment other than medication; pain relief measures; and other factors concerning functional limitations and restrictions due to pain or other symptoms.[11]

The ALJ did not reject Plaintiff's disability claim due to any contradictions in Plaintiff's testimony that could be explained by a weak memory; nor were the contradictions shown to be caused by memory problems.  For example, Plaintiff explained the contradiction in her

---

[10] *See* 20 C.F.R. § 404.1529(b), (c)(3).

[11] *See* 20 C.F.R. § 404.1529(c)(3)(i)-(vii).

testimony concerning why she left employment at the Dollar General by
stating that she misunderstood the ALJ's earlier question.  Tr. 93.  Rather,
the ALJ relied on substantial evidence in the record that indicates Plaintiff is
capable of work with stated limitations.  The ALJ considered Plaintiff's self-
reports, testimony at the hearing, and the medical records and opinions,
and concluded that Plaintiff was capable of working with limitations,
including simple routine tasks, simple work-related opinions, stable work
environment, simple instructions, only occasional interaction with
supervisors, and no interaction with the public.  Because substantial
evidence supports the findings and conclusions of the ALJ, no error has
been demonstrated.

### D. Dr. Sampson's Diagnosis of Anxiety

Plaintiff contends in her last issue that the decision should be
reversed because it is internally inconsistent in that the ALJ discounted
Dr. Sampson's diagnosis of anxiety even though the ALJ found generalized
anxiety disorder as a severe impairment.  ECF No. 15 at 9.  The ALJ
explained that she gave Dr. Sampson's mental assessment that Plaintiff
suffered from both anxiety and bipolar little weight because he was not a
mental health specialist and because the record did not support "the
diagnoses."  Although this statement, combining Dr. Sampson's diagnoses

of both bipolar and anxiety and his finding the "diagnoses" are not supported by the record, is technically incorrect because the record does support a diagnosis of anxiety disorder, the error is harmless.  *See* <u>Diorio v. Heckler</u>, 721 F.2d 726, 728 (11th Cir. 1983) (holding that irrelevant errors are harmless and do not require reversal).  The ALJ found anxiety disorder to be a severe impairment.  Whether Dr. Sampson agreed or disagreed with the diagnosis of anxiety disorder is irrelevant.

Plaintiff also cites as inconsistent the ALJ's statement that Plaintiff has the ability to relate to and work with supervisors, co-workers, and the public, but determined an RFC that limited interaction with supervisors and provided for no interaction with the public.  *Id.*  The ALJ noted that although Plaintiff claimed disability from December 1, 2014, she continued to interact with supervisor, co-workers, and the public in her job at Dollar General for several years thereafter.  Tr. 16.  The ALJ also noted that in June 2016, Plaintiff reported having problems with interaction with others and having panic attacks.  Plaintiff testified at the hearing that she had problems interacting with others.  The ALJ's decision is not inconsistent in finding an RFC that imposes limitations on interaction with supervisors and the public in light of Plaintiff's claims and medical records noting problems with such interactions.  Plaintiff has failed to demonstrate that the decision of the ALJ

is not based on substantial evidence or that any error in the decision

requires reversal.

## IV.  Conclusion

Considering the record as a whole, the decision of the Administrative

Law Judge is supported by substantial evidence in the record and

application of the proper legal standards.  Accordingly, the decision of the

Commissioner to deny Plaintiff's application for a period of disability and

disability benefits should be **AFFIRMED** and Judgment entered for

Defendant.

**IN CHAMBERS** at Tallahassee, Florida, on November 26, 2019.

**s/ Charles A. Stampelos**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**